IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

BARON FINANCIAL CORPORATION        :

      v.                                    :        CIVIL NO. WDQ 03-3563

RONY NATANZON, et al.              :

MEMORANDUM OPINION

Pending are the Motion to Dismiss Counts II, IV V, VI, VII, VIII, IX and X of the Second Amended Complaint against Rony Natanzon, Tova Natanzon, Martin Taylor, Amit Natanzon, Vered Taylor, Harold Taylor, MAP, LLC, Nationwide Check Services, LLC, Nationwide Equipment Sales, LLC, and Nationwide Credit Card Center, LLC (collectively, "the Natanzon defendants") and defendant Stuart Rombro's Motion to Dismiss the Second Amended Complaint.  For the reasons stated below, the Natanzon defendants' Motion to Dismiss will be granted in part and denied in part, and Rombro's Motion to Dismiss will be granted.

DISCUSSION

A. Natanzon Defendants' Motion to Dismiss

**Count II**

In Count II of the 11 count second amended complaint ("AC2d"), Baron alleged that the Natanzon defendants and Stuart R. Rombro have conspired to aid the breach of the MOU and Rider.

The defendants seek dismissal of Count II on the ground that absent an underlying tort, there can be no civil conspiracy for breach of those agreements.

1

In determining whether Count II may be maintained against the defendants, the Court must bear in mind that

> " 'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." * * * * * It is not, therefore, for simply conspiring to do the unlawful act that the action lies. It is for doing the act itself, and the resulting actual damage to the plaintiff, that afford the ground of the action.
> \* \* \* \* \*
> "No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.

*Alleco Inc. v. Harry & Jeanette Weinberg Foundation*, 340 Md. 176, 189-190 (1995)(citations omitted).

Maryland's courts have "refused to adopt any theory of tortious interference with contract or with economic relations that converts a breach of contract into an intentional tort." *Kaser v. Financial Protection Marketing, Inc.*, 376 Md. 621, 629 (2003). Accordingly, a civil conspiracy count may not be maintained against Rony Natanzon, a party to the allegedly breached agreements.[1] *See Berry & Gould, PA v. Berry*, 360 Md. 142 (2000)(breach of contract by party is not a basis for tort claim against that party).

As there is no tort claim against Rony Natanzon for breaching the agreements, the remaining defendants are not liable for conspiring with him to breach the MOU and Rider.

**Count IV**

---

[1] Although at various places in its Opposition, Baron asserts that Romy Natanzon is not a party to the MOU or Rider, the first numbered paragraph of the Second Amended Complaint alleges that he "agreed in the MOU and Rider which resolved earlier litigation to operate ERN in the ordinary course of business and to use his best efforts to maximize the profitability of ERN". AC2d ¶ 1 (1).

2

In Count IV, Baron alleged that the defendants have conspired to intentionally interfere in the MOU and Rider. Maryland has long recognized the tort of interference with contractual or business relationships:

> the two general types of tort actions for interference with business relationships are inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract. The principle underlying both forms of the tort is the same: under certain circumstances, a party is liable if he interferes with and damages another in his business or occupation.

*Kaser v. Financial Protection Marketing, Inc.*, 376 Md., *supra*, at 629. However, Rony Natanzon cannot intentionally interfere with contracts to which he is a party; "the tort of wrongful interference with economic relations will not lie where the defendant is a party to the economic relationship with which the defendant has allegedly interfered". *Id*.

Although Rony Natanzon may be immune from tort liability for his breaches of the MOU and Rider, his codefendants may have tort liability--not derived from Rony Natanzon's breaches-- for their conduct. The tort of intentional interference with economic relations requires a plaintiff to prove: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiff in its lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting. *Carter v. Aramark Sports and Entertainment Services,* 153 Md.App. 210, 240 (2003) *cert. denied* 380 Md. 231(2004).

Baron has alleged, *inter alia*, that the defendants diverted corporate opportunities from ERN to Natanzon family-owned entities, AC2d ¶¶ 4, 28-31 and transferred ERN funds and assets to Natanzon family-owned entities, id ¶ 6. Baron has also alleged that the defendants' conduct was done

3

with "the expectation and intent to disadvantage ERN," to minimize ERN's profitability, with "the intent to cause harm to Baron." *Id*. at ¶¶ 54, 61. Baron has also alleged that it has sustained damages as a result of that conduct. Accordingly, Baron has stated a claim for intentional interference with economic relations against all defendants except Rony Natanzon.

**Count V**

In Count V, Baron alleged that the defendants have unlawfully aided and abetted the breach of the MOU and Rider. As the Maryland Court of Appeals has observed the analysis of the sufficiency of an aiding and abetting count begins with the determination whether the plaintiffs have adequately alleged the commission of a tort: "tort liability for aiding and abetting can only exist whe[n] someone has committed [an] actual tort." *Alleco*, 340 Md., *supra*, at 201.
As the breach of the MOU and Rider are not torts, there is no liability aiding and abetting such breaches.

**Count VI**

In Count VI, Baron alleged that Rony Natanzon and Rombro have intentionally interfered with Baron's security interest in ERN's Concord credit card portfolio. This count is but an attempt to "convert[] a breach of contract into an intentional tort." Absent a tort claim against Natanzon, the count against Rombro must also fail.

**Count VII**

In Count VII, Baron alleged that Rony Natanzon and Rombro have converted Baron's secured interest in ERN's Concord credit card portfolio by filing a UCC Financing Statement Amendment. The Natanzon defendants contend that Count VII should be dismissed because Maryland does not

4

recognize the tort of conversion of completely intangible rights. The Maryland Court of Appeals has observed:

> The original common law rule was that a claim for conversion could not be sought unless the plaintiff's property was tangible. That rule has been modified over time and certain intangible property interests may now be recovered through a conversion claim.
>
> * * * * *
>
> We agree that the tort of conversion generally may extend to the type of intangible property rights that are merged or incorporated into a transferable document. We refuse, however, to extend the tort further, to cover completely intangible rights or . . . to situations in which the relevant document itself has not been transferred. Thus, . . . to state a claim for conversion . . ., it must [be] alleg[ed] that tangible documents evidenced those property interests and that the documents were transferred improperly[.]

*Allied Inv. Corp. v. Jasen*, 354 Md. 547, 562 (1999). As Count VII lacks an allegation of an improper transfer of a tangible document, the Second Amended Complaint fails to state a claim for conversion. There are, of course, other remedies for redressing interference with one's economic relationships.

**Count VIII**

In Count VIII, Baron alleged that Rony Natanzon and Rombro have conspired to intentionally interfere with Baron's "contract rights represented by the UCC Financing Statement and perfected security interest in ERN's Concord credit card portfolio". For the reasons above in the discussion of Count VI, this claim must also fail.

**Count IX**

In Count IX, Baron alleged that Rony Natanzon and Rombro have aided and abetted

intentional interference with Baron's "contract rights represented by the UCC Financing Statement and perfected security interest in ERN's Concord credit card portfolio."

As the Maryland Court of Appeals has observed the analysis of the sufficiency of an aiding and abetting count begins with the determination whether the plaintiffs have adequately alleged the commission of a tort: "tort liability for aiding and abetting can only exist whe[n] someone has committed [an] actual tort."  *Alleco*, 340 Md., *supra*, at 201.

As this tort claim against Romy Natanzon arose from his contractual relations with Baron, it must fail; accordingly, the aiding and abetting claims must also fail.

**Count X**

In Count X, Baron alleged that Rony Natanzon fraudulently transferred his right to purchase ERN LLC assets to defendant ERN Acquisition, LLC.  Given the muddled and conflicting factual assertions raised by the parties, this count will survive.

B.  Rombro Motion to Dismiss

The Second Amended Complaint alleges that defendant Rombro: (1) is the former attorney for ERN, LLC, Rony Natanzon, and the other corporate defendants, AC2d ¶ 11; (2)  created corporate entities to which Rony Natanzon diverted corporate opportunities, *see, e.g.*, ¶¶ 29, 82, and 95; and (3) filed a UCC Financing Statement Amendment, *see, e.g., id.*, at ¶¶120 and 132.  As the Second Amended Complaint's well pled allegations state only that Rombro performed certain legal tasks for ERN, LLC, Rony Natanzon, and the other corporate defendants, that complaint fails to state claims against Rombro.

CONCLUSION

For the previously stated reasons, counts II, IV V, VI, VII, VIII, and IX against Rony Natanzon will be dismissed; counts II, V, VI, VII, VIII, and IX against the other Natanzon defendants will be dismissed; and the Second Amended Complaint against Rombro will be dismissed.

<u>July 22, 2005</u>    <u>      /s/           </u>
Date    William D. Quarles, Jr.
    United States District Judge