## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

**CHAMBERS OF**
**SUSAN K. GAUVEY**
**U.S. MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**MDD_skgchambers@mdd.uscourts.gov**
**(410) 962-4953**
**(410) 962-2985 - Fax**

July 11, 2006

David B. Goldstein, Esq.
Brooke Schumm, III, Esq.
Daneker, McIntire, Schumm, Prince,
Goldstein, Manning & Widmann, P.C.
One North Charles Street, Suite 2450
Baltimore, MD 21201

Robert B. Levin, Esq.
Paul Mark Sandler, Esq.
Shapiro, Sher, Guinot & Sandler
36 South Charles Street, Suite 2000
Baltimore, MD 21201

      Re:  Baron Financial Corporation v. Rony Natanzon, et al.
          Civil No. SKG-03-3563

Dear Counsel:

     Pending before the Court is Plaintiff-Counter Defendant,
Baron Financial Corporation's ("Baron") and Third-Party
Defendant, Samuel Buchbinder's ("Buchbinder") Motion to Dismiss,
or in the Alternative for Summary Judgment, as to Counter-
Plaintiff/Third Party Plaintiff Rony Natanzon's ("Natanzon")
Counterclaim and Third-Party Complaint ("Counterclain"). (Paper
No. 87). The issue is fully briefed. No hearing is necessary.
Local Rule 105.6. Two counts remain before the Court: Count I
(Intentional Interference with Economic Interests) and Count IV
(unfair competition).[1] For the reasons discussed below, the
Court hereby GRANTS Baron and Buchbinder's motion and dismisses
Natanzon's counterclaim with prejudice.

## I.   Background

---

[1] Natanzon concedes that he lacks standing to bring Count II and
Count III. As a result, Count II and III are hereby dismissed, with
prejudice, as to Natanzon.

ERN, LLC ("ERN") and Natanzon jointly filed the counterclaim against Baron and Buchbinder on February 25, 2004.  On April 28, 2004, ERN filed for bankruptcy.  Pursuant to Section 362 of the bankruptcy code, all proceedings therein regarding ERN were stayed.  (Paper No. 28).  A bankruptcy trustee was appointed for ERN on May 24, 2004.  Baron and Buchbinder have moved to dismiss the counterclaim only as to Natanzon.

In evaluating a motion to dismiss, the unwavering focus of the Court must necessarily be on the language and content of the counterclaim.  A careful reading of the counterclaim demonstrates the gravamen of the complaint are actions against and damages to ERN.  References to actions affecting Natanzon as separate from his role in ERN and damages to Natanzon separate from his role in ERN are few and largely subsidiary.  Thus, careful scrutiny of the actions and damages alleged against Natanzon does not yield any viable claims of Natanzon.

## II. <u>Analysis</u>

Baron and Buchbinder argue that plaintiff does not have standing to bring his claim for tortious interference or unfair competition claim.  In the alternative, Baron and Buchbinder argue that Natanzon failed to state a claim on which relief can be granted.  They allege that the claim for tortious interference should be dismissed because Buchbinder and Baron are parties to the underlying MOU/Rider business relationship, and because Natanzon failed to allege that the conduct complained of was wrongful.  Moreover, Baron and Buchbinder allege that the unfair competition claim should be dismissed because the conduct complained of does not support a claim for "unfair competition." The Court largely agrees with Baron and Buchbinder's arguments.

### A. <u>Standard of Review</u>

When the legal sufficiency of a complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." <u>Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship</u>, 213 F.3d 175, 180 (4th Cir. 2000) (<u>citing</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." <u>Migdal v. Rowe Price-Fleming Int'l Inc.</u>, 248 F.3d 321, 325 (4th Cir. 2001).

Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Migdal</u>, 248 F.3d at 325-26; <u>see also</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  <u>Ibarra v. United States</u>, 120 F.3d 472, 473 (4th Cir. 1997); <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). However, in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts." <u>Eastern Shore Mkts., Inc.</u>, 213 F.3d at 180.  <u>Accord</u> <u>Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.</u>, 329 F.Supp.2d 574, 578 (D. Md. 2004). In addition, courts need not accept conclusory factual allegations devoid of reference to any facts, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979).

   B.   <u>Claim of Intentional Interference with Economic Interests</u>

Both parties agree that Natanzon does not have standing to address claims which belong solely to ERN.  <u>See</u> <u>National American Ins. Co. v. Ruppert Landscaping Co., Inc.</u>, 187 F.3d 439, 441 (4th Cir. 1999).  (Paper No. 99 at 4).

Natanzon asserts that he has standing to bring a tortious interference claim on the following facts: Baron and Buchbinder allegedly damaged ERN's and Natanzon's economic relationships with independent sales organizations (ISOs) and merchants by making statements to ISOs about their lawsuits against ERN and Natanzon and about Natanzon personally. (Paper No. 99 at 8-10, 12, 16);  Baron interfered with Natanzon's business interests by "frustrating ERN's and Natanzon's ability to devote" their full time to the operation of their business, (Paper No. 18 at 12, 16); and Baron and Buchbinder allegedly filed lawsuits and otherwise interfered in Natanzon's attempt to rehabilitate ERN and meet *his* obligations under the MOU. (Paper No. 99 at 2). Each of Natanzon's claims will be addressed in turn.

> 1. Interference with the Natanzon's obligations under the MOU

First, Natanzon asserts that Baron and Buchbinder interfered in Natanzon's attempt to rehabilitate ERN and meet his obligations under the MOU.  As a matter of law, this claim cannot stand.

The tort of wrongful interference with an existing contract will not lie where the defendant is a party to the economic relationship with which the defendant has allegedly interfered. Kaser v. Financial Protection Marketing, Inc., 376 Md. 621, 831 A.2d 49 (2003); Alexander v. Evander, 336 Md. 635, 640 n.8, 650 A.2d 260, 265 (1994);[2] Travelers Indem. Co. v. Merling, 326 Md. 329, 343, 605 A.2d 83, 89-90 (1992); K&K Management, Inc. v. Lee, 316 Md. 137, 156, 557 A.2d 965, 974 (1989); Wilmington Trust Co. v. Clark, 289 Md. 313, 329, 424 A.2d 744, 754 (1981).  Judge Quarles previously dismissed Baron and Buchbinder's complaint against Natanzon for tortious interference with the MOU, because Natanzon, Baron and Buchbinder are all parties to the MOU. (Paper No. 71).  For the same reasons, as a matter of law, Natanzon cannot recover for tortious interference with the MOU.

> 2. Interference with ERN's and Natanzon's economic relationship with independent sales organizations.

Natanzon also alleges that Baron and Buchbinder's wrongful conduct damaged ERN and Natanzon's relationship with the independent sales organizations (ISOs) and merchants. (Paper No. 99 at 8-10).

"Tortious interference with business relationships arises only out of the relationship between three parties, the parties to a contract or other economic relationship... and the interferer."  K&K Management, Inc. v. Lee, 316 Md. 137, 154, 557 A.2d 965, 973 (1989).  A party may maintain an action "upon the

---

[2] Natanzon asks the Court to distinguish Alexander and Kaser on factual and procedural grounds.  However, even if these cases are distinguishable, other Maryland cases are on-point. See Travelers Indem. Co. v. Merling, 326 Md. 329 (1992); K&K Management, Inc. v. Lee, 316 Md. 137, 557 A.2d 965 (1989); Wilmington Trust Co. v. Clark, 289 Md. 313, 329, 424 A.2d 744, 754 (1981).  Moreover, the Court notes that Natanzon previously argued that the complaint against him for intentional interference with the MOU should be dismissed because both he and Baron were parties to the contract. (Paper No. 54-1)("Under Maryland law, a party to a contract cannot be held liable for tortious interference with the contract.")

doctrine that a man who induces one of two parties to a contract to break it, intending thereby to injure the other or to obtain a benefit for himself, does the other an actionable wrong." Natural Design, Inc. v. Rouse Co., 302 Md. 47, 485 A.2d 663 (1984).[3]  Accord Restatement (Second) of Torts § 766.

Only parties to the contract or economic relationship have standing to bring a tortious interference claim; third-parties who are affected by the wrongful interference may not recover unless they are intended beneficiaries of the relationship or contract.[4]  See Restatement (Second) of Torts § 766 cmt. p ("The person protected by the rule... is the specified person with whom the third person had a contract that the actor caused him to perform... Thus, if A induces B to break a contract with C, persons other than C who may be harmed by the action as, for example, his employees or suppliers, are not within the scope of the protection afforded by this rule, unless A intends to affect them.  Even then they may not be able to recover unless A acted for the purpose of interfering with their [the employees' or the suppliers'] contracts."); Macklin v. Robert Logan Assocs., 334 Md. 287, 297, 639 A.2d 112, 117 (1994)(Tortious interference with an economic relationship "is committed when a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract or, absent an

---

[3] As discussed below, the tort of interference with economic relations embraces two distinct types of tort actions: 1) the intentional and improper inducement of a breach of an existing contract; and 2) the intentional and improper interference with prospective business relationships.  Natanzon alleges that ERN had an "arrangement" with the ISOs.  As result, Natanzon appears to be bringing a claim for tortious interference with contract.  However, even if Natanzon is bringing a claim for tortious interference with a prospective business relationship, he would only have standing to bring the claim if his prospective relationship with the ISOs were disrupted.  See Restatement (Second of Torts) § 766B ("One who intentionally interferes with another's prospective contractual relation... is subject to liability to the other for the pecuniary harm resulting from the loss of benefit of the relationship.").

[4] "A third party beneficiary contract arises when two parties enter into an agreement with the intent to confer a direct benefit on a third party, allowing that third party to sue on the contract despite his or her lack of privity."  Rosemary Williams, Maryland Law Encyclopedia § 103 (2006).  See also  17b CJS Contracts § 612 (2005). The nature of a third-party beneficiary contract is the promisor engages with the promisee to render some performance to a third-party. The contractual right which a third-party beneficiary acquires is the right to enforce a promise made for his or her benefit.

existing contract, maliciously or wrongfully infringes upon an economic relationship."); CYS Liquidating Corp. v. Harris Trust and Savings Bank, 162 F.3d 929, 933 (7th Cir. 1998)("[T]he tort of intentional interference with contract is meant to protect the parties (including third-party beneficiaries, assignees, and others having the rights of the parties) to contracts, rather than persons who might be harmed by a breach of someone else's contract.") (internal citations omitted).

As a result, a shareholder or member of a corporation or LLC may not recover for tortious interference of the business or contract of the corporation or LLC.  See First Commercial Bank, N.A. v. Walker, 333 Ark. 100, 109, 969 S.W.2d 146, 150 (1998) (sole shareholder lacked standing to bring claim for tortious interference with the company's contracts); Fineman v. Armstrong World Industries, 980 F.2d 171, (3d Cir. 1992)(tortious interference claim of entrepreneur failed as a matter of law when he failed to establish injury to a prospective economic relationship, other than the relationship between his company and prospective clients, as "the parties have not suggested, nor have we been able to find, any New Jersey cases addressing a claim for tortious interference brought by a plaintiff who was not a party to the contract")(emphasis added); Campanella, 1-11 Business Torts, § 11.03 (2006)("[I]t has been held that an individual who was the principal stockholder of a corporation, and a guarantor of the corporation's loans, did not have standing as a shareholder or guarantor to sue the lender for interference with a contractual relationship.").

In this case, the sole economic relationship at issue is the relationship between ERN and the ISOs.  Natanzon failed to allege that he was either a separate party to the contract or that he had a distinct business relationship with the ISOs.  Thus, even though Natanzon alleges he suffered reputational damages from Baron and Buchbinder's interference in the relationship between the ISOs and ERN, he does not have standing to be compensated for these damages.[5]

Even if Natanzon had standing, in the alternative, the claim must be dismissed, as he failed to specifically allege that Baron and Buchbinder engaged in unlawful conduct.  An essential element of a tortious interference claim is a showing that the actions

_____

[5] In so holding, the Court notes that Natanzon had other avenues to seek compensation for this injury, including by bringing a claim for any defamatory statements of or concerning him.

undertaken were "wrongful", or this case, that the words spoken
were defamatory.  See <u>Martello v. Blue Cross and Blue Shield of
Maryland, Inc.</u>, 795 A.2d 185, 143 Md.App. 462, 478
(2002)(dismissing tortious interference count when underlying
complaints of antitrust behavior were also dismissed);
Restatement (Second) of Torts § 767.  "[W]rongful or malicious
interference with economic relations is interference by conduct
that is independently wrongful or unlawful, quite apart from its
effect on the plaintiff's business relationships. Wrongful or
unlawful acts include common law torts and 'violence or
intimidation, defamation, injurious falsehood or other fraud,
violations of criminal law, and the institution or threat of
groundless civil suits or criminal prosecutions in bad faith."
<u>Carter v. Aramark Sports and Entertainment Services</u>, 153 Md.App.
210, 240 (2003), <u>cert denied</u> 380 Md. 231 (2004).

        While Natanzon argued that Baron and Buchbinder defamed him,
he failed to allege in his complaint facts sufficient to support
a prima facie case of defamation or unlawful intimidation.  <u>See</u>
<u>Audio Visual Associates, Inc. v . Sharp Electronics Corp.</u>, 210
F.3d 254, 261 (4th Cir. 2000)(dismissed plaintiff's claim where
the allegations, "without more, do not support a necessary claim
of 'violence or intimidation, defamation, injurious falsehood or
other fraud, violation of the criminal law, and the institution
or threat of groundless civil suits or criminal prosecutions in
bad faith); <u>Kwang Dong Pharmaceuticals Co. v. Han</u>, 205 F.Supp.2d
489 (D. Md. 2002)("Defamation may satisfy the elements of
tortious intent... Han has adequately asserted a defamation claim
against KD in his counterclaim by alleging that KD falsely told
Georgetown that Han had misappropriated research money for his
own use and had not met his research schedule, that KD knew these
statements were false, and that Han suffered harm through the
loss of the job.  Therefore, he has sufficiently alleged an
underlying tortious act in support of his tortious interfere with
business advantage claim).[6]

---

        [6] Indeed, some authority suggests that Natanzon must have in fact
alleged a separate count of defamation in his complaint.  <u>See</u> <u>Southern</u>
<u>Volkswagen, Inc. v. Centrix Financial, LLC</u>, 357 F.Supp.2d 837, 851 (D.
Md. 2005)("In their Complaint, Plaintiffs allege that (1) the
agreement by Centrix not to deal with them (the antitrust claim) and
(2) the statement by Centrix that Plaintiffs were a 'fraud and being
investigated for fraud crimes with banks and customers' were the
'wrongful acts' which formed the basis for this tort.  Plaintiffs have
not stated a claim for antitrust violation, and thus this cannot be
the wrongful action.")  Given the paucity of allegations here, it is
not necessary to decide whether this would provide another basis for
dismissal.

To assert a prima facie case of defamation in Maryland: a plaintiff must establish "that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm."  Gohari v. Darvish, 363 Md. 42, 767 A.2d 321, 327 (2001)(internal citations omitted).

In this case, Natanzon alleged in his counterclaim that "Buchbinder and others acting on his behalf made comments to persons associated with ISOs, stating that Buchbinder and Baron were taking legal action against ERN and Natanzon seeking substantial money damages."  (Paper No. 18 at 14).  The facts alleged are not sufficient to support a prima facie case of defamation.

> 3.   Interference by "Frustrating ERN's and Natanzon's ability to devote" their full time to the operation of their business."

Finally, Natanzon contends that his claims of tortious interference extend beyond the MOU to his allegations of interference with other economic relationships, "i.e. to be free from harassment, intimidation, and defamation from Baron and Buchbinder generally."  (Paper No. 99 at 16).

No authority suggests that a cause of action exists to recover for tortious interference with one's occupation and livelihood in general.  See Bagwell v. Peninsula Regional Medical Center, 106 Md.App. 470, 665 A.2d 297 (1995)(citing Alexander, 336 Md. at 650-1)(The tort of interference with economic relationships "lies where the wrongful conduct of the defendant interferes with plaintiff's existing or anticipated business relationships.").

Even if the Court assumes that Natanzon intended to bring a claim for tortious interference with unknown future prospective business relationships,[7] the claim must fail, because Natanzon failed to state a claim on which relief can be granted.

At issue is how certain the anticipated business relationship must be before a party may bring a claim seeking damages for the disruption of the relationship.  Maryland courts have never addressed this issue.  As a result, the Court must

---

[7] Natanzon asserted in his pleading that Baron and Buchbinder interfered with his relationship with ISOs.  However, for the reasons discussed above, he may not bring a claim on this ground.

predict how the Maryland Court of Appeals would decide the issue
by considering "restatements of the law, treatises, and well
considered dicta."  Private Mortg. Inv. Servs., Inc. v. Hotel and
Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2004).  Other
relevant sources include the rule adopted by the majority of
courts, 19 Wright, Miller & Cooper, Federal Practice and
Procedure: Jurisdiction 2d § 4507 (1996); Phillips v. Glen Falls
Ins. Co., 288 F.Supp. 151, 155 (W.D. Va. 1968), and relevant
federal court decisions.  CTI/DC, Inc. v. Selective In. Co. of
America, 392 F.3d 114, 121-2 (4th Cir. 2004).

        Under the Reporter's Notes to the Restatement (Second) of
Torts, an individual must allege more than a disruption of a
future relationship to a yet to be determined party - a
"reasonable probability" must be shown that a contract will arise
from the parties' current dealings."  Reporter's Note to the
Restatement (Second) of Torts § 766B.  Similarly, every state
which has addressed the issue[8] has found that the party must
establish some evidence that a prospective business relationship
is likely to occur.[9]  See Alvord-Polk, Inc. v. F. Schumacher &
Co., 37 F.3d 996, 1015 (3d Cir. 1994)(Pennsylvania law)(a
plaintiff must establish the existence of a prospective contract
which is something more than a contractual right and less than a
mere hope:  "It exists if there is a reasonable probability that
a contract will arise from the parties' current dealings."); APG,
Inc. v. MCI Telecommunications Corp., 436 F.3d 294, 304 (1st Cir.
2006)(Rhode Island law)(plaintiff must establish that "but for
the interference there would have been a relationship or that it
is reasonably probable that but for the interference the
relationship would have been established. Evidence must be
reasonably definite and not speculative or remote."); United
Distributors, LLC v Educational Testing Services, 350 S.C. 7, 564
S.E.2d 324, 326 (S.C.App. 2002)("The plaintiff must actually
demonstrate, at the onset, that he had a truly prospective (or
potential) contract with a third party.  This does not require
plaintiff to prove the tort in his initial pleading; rather the
allegations must give rise to some reasonable expectation of
benefits from the alleged lost contracts... Mere hope of profits

_____

        [8] The following states have not addressed this issue at this
time: Arizona, Kentucky, Louisiana, New Mexico, Ohio, and Oregon.

        [9] In general, most states treat the tort of tortious interference
with prospective contract interchangeably with the tort of tortious
interference with prospective business, or economic relations.  The
sole exception to this rule is Wisconsin, which only recognizes the
tort of tortious interference with prospective contract.  See Shank v.
William R. Hague, Inc., 192 F.3d 675 (7th Cir. 1999).

is not enough."); Ex parte Alabama Dept. of Transp, 764 So. 2d
1263, 1270 (Ala. 2000)("protection is appropriate against
improper interference with reasonable expectancies of commercial
relations"); United States West, Inc. v. Business Discount Plan,
Inc., 196 F.R.D. 576, 594 (D. Colo. 2000)(A protected
relationship only exists if there is a reasonable likelihood or
possibility that a contract will arise from the parties'
dealings; there must be something more than a mere hope);
Etypharm S.A. v. Bentley Pharmaceuticals, Inc., 388 F.Supp.2d
426, 435 (D. Del. 2005)(there is a reasonable probability that a
contract will arise from the parties' current dealings); Mangrum
v. Republic Industries, Inc., 260 F.Supp.2d 1229, 1257 (N.D. Ga.
2003)(economic relations must have been reasonably likely to
develop in fact); Cockerham v. Kerr-McGee Chemical Corp., 23 F.3d
101, 105 (5th Cir. 1994)(Mississippi law)(same); MGE UPS Systems,
Inc. v. Fakouri Elec., 422 F.Supp.2d 724, 740 (S.D. Tex.
2006)(same); Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v.
PepisoCo, Inc., 431 F.3d 1241, 1263-4 (10th Cir. 2005)(Kansas
law)(except for the conduct of the defendant, plaintiff was
reasonably certain to have continued the relationship); ISS
Cleaning Services Group, Inc. v. Cosby, 745 So.2d 460, 462
(Fl.App.4 Dist. 1999)(the existence of an actual, identifiable
understanding or agreement, which in all probability would have
been completed if the defendant had not interferred); Miles
Distributors, Inc. v. Specialty Construction, 417 F.Supp.2d 1030,
1037-8 (N.D. Ind. 2006)(existence of a business relationship
known to the defendant); Comfax Corp. v. North American Van
Lines, Inc., 587 N.E.2d 118, 124 (Ind.App.1 Dist. 1992) (granting
summary judgment on count where countercomplaint failed to show
interfered with relations with third party beyond bald assertion
of possible business relations); Economy Roofing and Installation
Co. v. Zumaris, 538 N.W.2d 641, 651 (Iowa 1995)(A prospective
business relationship is a "reasonably likely contract of
financial benefit to the plaintiff" or a "reasonably likely
business relationship of financial benefit to the plaintiff.");
Lucas v. Monroe County, 203 F.3d 964 (6th Cir. 2000)(Michigan
law)("The [business relationship or expectancy of a relationship]
must be a reasonable likelihood or a probability, not mere
wishful thinking. To demonstrate such a realistic expectation,
Plaintiffs must prove an anticipated business relationship with
an identifiable class of third parties.")(internal citations
omitted); Brotherhood Ry. Carmen of U.S. and Canada Div. Of
Transportation Communications Union v. Missouri Pacific R. Co.,
944 F.2d 1422 (8th Cir. 1991)(Missouri law)(tortious interference
claim "may indeed rest on reasonable expectation of commercial
relations"); Macke v. Pierce, 266 Neb. 9, 11, 661 N.W.2d 313
(Neb. 2003)(must establish the existence of a valid business
relationship or expectancy and knowledge by the interferer of the

10

relationship or expectancy); <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 563, A.2d 31, 36 (1989)("There must be allegations of fact giving rise to some reasonable expectation of economic advantage."); <u>Scutti Enterprises, LLC v. Park Place Entertainment Corp.</u>, 322 F.3d 211 (2d Cir. 2003)(New York law)(mere expectation or hope of a prospective relationship is not sufficient for plaintiff to recover); <u>Trau Med of America, Inc. v. Allstate Ins. Co.</u>, 71 S.W.3d 691, 701 (Tenn. 2002)(plaintiff must allege a proposed business relationship with an "identifiable class of third persons"); <u>Tatum v. Phillip Morris, Inc.</u>, 809 F.Supp. 1452, 1469 (W.D. Okla. 1992)(reasonable expectation of economic advantage); <u>Proctor & Gamble Co. v. Hagen</u>, 947 F.Supp. 1551, 1556-7 (D. Ut. 1996)( a plaintiff cannot rest on conclusory allegations that it has existing or potential economic relations. The element requires a plaintiff to allege facts showing either an existing contract or business relationship with a third party, or a potential contract or business opportunity with a third party or an identifiable class of third person); <u>Gifford v. Sun Data, Inc.</u>, 165 Vt. 611, 613, 686 A.2d 472, 475 (Vt. 1996)(too speculative relationship between plaintiff and customers solicited to establish economic relationship); <u>American Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 227 (4th Cir. 2002)(Virginia law)(proof of the existence of the business expectancy and intentional misconduct elements of tortious interference must meet an objective test, and mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action.); <u>Wood County Airport Authority v. Crown Airways, Inc.</u>, 919 F.Supp. 960 (S.D.W.Va. 1996)(plaintiff must prove existence of contract or other business relation). [10]

---

[10] Other jurisdictions maintain a third cause of action, tortious interference with prospective business advantage or prospective economic advantage.  Some authority suggests that this tort is identical to the claim of tortious interference with prospective economic relationship. <u>See</u>, <u>Medical Mut. Liability Ins. Soc. of Maryland v. B. Dixon Evander & Assocs.</u>, 331 Md. 301, 628 A.2d 170, 171 (1993)( In Maryland, the tort of interference with prospective business advantage is identical to tortious interference with prospective business relations); <u>Kwang Dong Pharmaceutical Co. v. Han</u>, 205 F.Supp.2d 489, 492 (D. Md. 2002)(same); <u>Daimlerchrysler Corp. v. Kirkhart</u>, 148 N.C.App. 572, 561 S.E.2d 276 (2002)(Even though the state only recognizes a tort of prospective economic advantage, because the broader category of "business relationships" encompasses the twin components of tortious interference: interference with contract and interference with prospective contract or prospective economic advantage, it is sufficient for a party to state a claim for

interference with "relations"); Lee and Lindahl, <u>Modern Tort Law:
Liability and Litigation</u> § 45.6 (2d ed. 2005) ("[I]nterference with
prospective contractual relations [which is] also referred to as
interference with prospective economic relations or prospective
business advantage."); Orrin K. Ames, <u>Tortious Interference with
Business Relationships: The Changing Contours of the Commercial Tort</u>,
35 Cumb. L. Rev. 317 (2004-5)("Other states have used various names to
refer to the tort of interference with business relationships:
tortious interference with business relations, tortious interference
with economic relations, PROSPECTIVE Economic or business advantage,
PROSPECTIVE advantageous relationship, and prospective contractual
relation, TO NAME A FEW. Whatever term is used in a particular
jurisdiction, ambiguity plagues any choice of language. It clarifies
the concept, however, to think of it in terms of some type of
prospective or future business expectancy that has not yet matured
into a contractual obligation."). <u>But see</u> <u>Overbeck v. Quaker Life Ins.
Co.</u>, 757 P.2d 846 (Okla.App. 1984)(even though the torts are similar,
the underlying theory of liability of a tortious interference with
economic advantage claim is distinguishable from the theory underlying
a tortious interference with contractual relations or business
relations claim, because economic advantage deals with reasonable
expectation of profits, and the other torts deal with the loss of
property rights).
        The Court does not have to decide at this time whether the tort
of economic advantage is identical to the tort of prospective business
or economic relations.  However, if the torts are identical, all of
the reported decisions which address the question before the Court
have found that the plaintiff must be able to show with some certainty
that an expected economic advantage exists and that, in the absence of
the defendant's interference, the advantage was likely to occur (with
at least some degree of certainty).  <u>See</u> <u>Kwang Dong Pharmaceutical Co.
v. Han</u>, 205 F.Supp.2d 489 (D. Md. 2002)(applying law of the District
of Columbia)(Vague references to a promising future career are not
enough to support a tortious interference claim); <u>Sister of Providence
in Washington v. A.A. Pain Clinic, Inc.</u>, 81 P.3d 989, 998 (Ak.
2003)(must show reasonable and legitimate prospects of entering such a
relationship); <u>Kidd v. Bass Hotels & Resorts, Inc.</u>, 136 F.Supp.2d 965,
969 (E.D. Ark. 2000)("It is elemental that some precise business
expectancy or contractual relationship be obstructed."); <u>Selby v.
Pelletier</u>, 1 Conn.App. 320, 324, 472 A.2d 1285, 1288 (1996)(the
plaintiff must prove that "there was a reasonable probability that the
plaintiff would have made a profit"); <u>Robert's Hawaii School Bus, Inc.
v. Laupahoehoe Transp. Co., Inc.</u>, 91 Hawaii 224, 258, 982 P.2d 853,
887 (Haw. 1999)(existence of valid business relationship or
prospective advantage or expectancy must be sufficiently definite,
specific, and capable of acceptance in the sense that there is
reasonable probability of it maturing into future economic benefit to
plaintiff); <u>Anderson v. Vanden Dorpel</u>, 172 Ill.2d 399, 406, 667 N.E.2d
1296 (Ill. 1996)(Reasonable expectancy of a valid business
relationship with a third party); <u>Singh v. Blue Cross & Blue Shield of
Massachusetts, Inc.</u>, 182 F.Supp.2d 164, 178 (D. Mass. 2001)(only a

12

The Court concludes that Maryland Courts would rule that plaintiffs must identify a possible future relationship which is likely to occur, absent the interference, with specificity. After all, without this showing, it is unclear how any of the following elements could be established: causation, <u>See</u> <u>Kaser v. Financial Protection Marketing, Inc.</u>, 376 Md. 621, 629, 831 A.2d 49 (2003); <u>Macklin v. Robert Logan Assocs.</u>, 334 Md. 287, 297, 639 A.2d 112, 117 (1994)(The alleged wrongful conduct must have in fact terminated or negatively affected the prospective relationship), damages, <u>See</u> Restatement (Second) of Torts § 774A ("If the question is whether the plaintiff would have succeeded in attaining a prospective business transaction in the absence of defendant's interference, the court may, in determining whether

---

"probable future business relationship anticipating a reasonable expectancy of financial benefit"); <u>Maloney v. Home and Investment Center, Inc.</u>, 298 Mont. 213, 225, 994 P.2d 1124 (Mont. 2000)(who is pursuing reasonable and legitimate prospects of entering such a relationship); <u>Daimlerchrysler Corp. v. Kirkhart</u>, 148 N.C.App. 572, 561 S.E.2d 276 (2002) (tortious interference with prospective advantage claim was dismissed, when plaintiff failed to show any particular contract that third party would have been induced to follow but for defendant's interference); <u>Schneider v. Schaaf</u>, 603 N.W.2d 869, 877 (N.D. 1999)(it is not enough that the plaintiff shows a reasonable possibility that he would have obtained some economic benefit in the absence of the defendant's intervention; he must instead show that he *would* have obtained the benefit, or in other words must prove his case by stringent standards); <u>Hayes v. Northern Hills Gen. Hos'p</u>, 590 N.W.2d 243, 250 (S.D. 1999)(This nexus must be that it is "reasonably probable that ... prospective economic advantage would have been realized but for the [defendants' conduct]." Nonexclusive criteria which may be appropriate for consideration are: (1) whether the business or economic enterprise is established, (2) its prior history of profits, economic growth and); <u>Gore v. Sherard</u>, 50 P.3d 705, 710-1 (Wyo. 2002)(unilateral belief and hope that a contact would result was inadequate to sustain a cause of action. A reasonable probability of a contract is shown if there is a reasonable assurance  of a contract in view of all the circumstances. In this case there was no such reasonable probability.); <u>M&D Cycles, Inc. v. American Honda Motor Co., Inc.</u>, 208 F.Supp.2d 115, 119 (D.N.H. 2002)(must submit evidence that it had reasonable expectation of economic advantage); <u>Wichinsky v. Mosa</u>, 109 Nev. 84, 847 P.2d 727, 730 (Nev. 1993)(must show a prospective contractual relationship existed between the plaintiff and a third party, and that the defendant knew of the relationship); <u>DeSimone v. MacQuinn-Tweedie</u>, 2003 WL 21018852 (Me. Supr. 2003)(same); Highland Enterprises, Inc. v. Barker, 133 Idaho 330, 337, 986 P.2d 996, 1003 (Idaho 1999)(same); Pacific Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal.3d 1118, 270 Cal. Rptr. 1 (1990)(requires an allegation that the conduct has disrupted a particular relationship).

the proof meets the requirement of reasonable certainty, give due weight to the fact that the question was "made hypothetical by the very wrong" of the defendant. Sometimes, when the court is convinced that damages have been incurred but the amount cannot be proved with reasonable certainty, it awards nominal damages."), or indeed the defendants' wrongful intent to interfere with the relationship. See Sandler and Archibald, Pleading Causes of Action in Maryland § 3.36 ("Even if defendants can be found to have a tortious intent by acting intentionally and willfully, the defendant will not be held liable for tortious interference with prospective advantage if his or her purpose or motive was not directed at the plaintiff's relationship with others.")

Natanzon's allegations of interference with ISOs are vague and unformed.  Read as generously and broadly as possible, the counterclaim hints at some damage to his relationship with some unidentified ISOs at some future time in some future business he might have (other than his role in ERN).  That is plainly insufficient under the great weight and consensus of the law cited above.

Count I of the complaint will therefore be dismissed, with prejudice, as to Natanzon.

B. Claim of Unfair Competition

In Count IV, Natanzon alleges that "Buchbinder and Baron have engaged in a pattern of conduct that, taken as a whole, constitute unfair competition with ERN and Natanzon.  This pattern of conduct is evidenced by (1) Buchbinder's and Baron's institution and prosecution of numerous lawsuits against Natanzon, ERN and ERN Israel; (2) their failure to make residual payments to ISOs with respect to their Assigned Portfolios, pursuant to the terms of the MOU and the Rider; (3) their improper demands for documentation; (4) their claim that ERN failed to process the patent application even though Buchbinder is aggressively his own 'all-in-one' POS machine (which has diminishes the value of any patent ERN might obtain); and (5) the additional matters described therein."  (Paper No. 18 at 19).

Maryland defines unfair competition as "damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods."  Maryland Metals v. Metzner, 282 Md. 31 (1978). "What constitutes unfair competition in a given case is governed by its own particular facts and circumstances. Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and

fairness, without taint of fraud or deception. Instead, the controlling legal principles 'are simply the principles of old-fashioned honesty. One may not reap where another has sown nor gather where another has strewn." <u>Lowry Reports, Inc. v. Legg Mason</u>, 271 F.Supp.2d 737 (D. Md. 2003)(citation and internal quotation marks omitted).

Natanzon's unfair competition claim pertains to damages to the business of ERN, LLC - not to any other business of Natanzon. Therefore, he does not have standing to bring an unfair competition claim for damages to the corporation. <u>National American Ins. Co. v. Ruppert Landscaping Co., Inc.</u>, 187 F.3d 439, 441 (4th Cir. 1999); <u>Detrick v. Panalpina, Inc.</u>, 108 F.3d 529, 535 (4th Cir. 1997); <u>Bowie v. Rose Shannis Financial Services, LLC</u>, 160 Md.App. 227, 235-6, 862 A.2d 1102, 1107 (2004); <u>Pacific Mortg. and Inv. Group, Ltd. v. Horn</u>, 100 Md.App. 311, 641 A.2d 913 (1994).  <u>See also</u> 11 U.S.C. § 541(a)(1)(The bankruptcy estate holds all property including "all  legal or equitable interest of the debtor in property as of the commencement of the case.")

Natanzon may bring a direct lawsuit for harms done to ERN, if, as an owner of ERN, he also suffered distinct, independent damages from that harm.  <u>See</u> <u>Strougo v. Bassini</u>, 282 F.3d 162, 170 (2d Cir. 2002) (applying Maryland law)("Where shareholders suffer an injury that does not stem from an injury to the corporation's business or property... the corporation lacks standing to sue, and Maryland's 'distinct injury' rule allows shareholders access to the courts to seek compensation directly."); <u>Delmarva Sash & Door Co. of Maryland, Inc. v. Andersen Windows, Inc.</u>, 218 F.Supp.2d 729, 734 (D. Md. 2002).[11]

---

[11] Natanzon argues that because ERN is a limited liability corporation, he is entitled to bring direct claims for both harms done to the corporation and harm to himself. (Paper No. 99 at 11).  Some courts have allowed shareholders of closely held corporations and closely held limited partnerships to bring a direct suit to enforce a right of the corporation, because a derivative suit is not necessary in those instances. <u>See</u>, <u>e.g.</u> American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 701.d (1992)("[T]he court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.").  Authority exists for extending the rule to LLCs in appropriate circumstances.  1 Ribstein and Keatinge, <u>Ribstein and Keatinge on Limited Liability Companies</u> §

Natanzon did not allege with specificity any "distinct" damages from the unfair competition claim.  In his counterclaim, Natanzon alleged that "as a result of defendants actions, ERN's and Natanzon's relationship with its ISO, merchants and suppliers have been damaged."  (Paper No. 18 at 19).   No showing has been made, however, that Natanzon had a relationship with its ISOs, merchants, and suppliers separate from ERN's relationship with the entities.  As a result, Natanzon does not have standing to bring Count IV (Unfair Competition).[12]  The claim will therefore be dismissed with prejudice, as to Natanzon.

III.  Conclusion

For the foregoing reasons, Baron and Buchbinder's Motion to Dismiss as to Rony Natanzon's Counterclaim and Third-Party

---

10:4 (2005) ("The argument against applying this provision to permit direct recovery by LLC members is that it removes the decision of whether to sue from the managers or owners who are best suited to weighing the costs and benefits of suit and allows it to be made by an individual member... But in a decentralized LLC, this would not be much different from allowing a member to sue in the firm's name only if authorized by the other members.").

However, when the LLC is in bankruptcy, claims for injuries to the LLC must belong to the bankrupt estate in order to further the goals of the bankruptcy system.  Under 11 U.S.C. § 323, the bankruptcy trustee has full authority to represent the estate and dispose of the debtor's property that makes up the estate, and has exclusive authority to sue on behalf of the estate.  3 Alan N. Resnick, Collier on Bankruptcy 3-323 (2006).  Detrick v. Panalpina, Inc., 108 F.3d 529, 535 (4th Cir. 1997)("[T]he decision whether to pursue a claim or not is vested within the trustee's decision.")  Permitting shareholders to file suits on behalf of the estate would effectively permit them to bypass the exclusive authority of the Trustee.  Moreover, the rule is necessary to prevent debtor-shareholders from filing lawsuits on behalf of the estate and therefore gain the estate's assets ahead of other creditors.  See National American Ins. Co. v. Ruppert Landscaping Co., Inc., 187 F.3d 439, 441 (4th Cir. 1999)("To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate).

[12] Because Natanzon does not have standing to bring the claim for unfair competition, the Court need not decide whether he stated a claim on which relief may be granted.  However, even if Natanzon did have standing, the Court is not convinced that the claim could survive.  While Maryland defines unfair competition broadly, the Court is not convinced that any conduct in the pleading rises to the level of unfair competition, even if all well-plead facts in the pleading are accepted as true.

16

Complaint is hereby GRANTED.  (Paper No. 99).  Natanzon's
Counterclaim and Third-Party Complaint is hereby dismissed in its
entirety with prejudice.

    Despite the informal nature of this letter, it should be
flagged as an opinion and docketed as an Order.

                              Sincerely yours,


                                  /s/


                              Susan K. Gauvey
                              United States Magistrate Judge


17